UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAMES and BILLIE FRENCH, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:14-CV-519-PLR-HBG |
| | ) |
| SPECIALIZED LOAN SERVICING, LLC, | ) |
| Servicing Agent for the Bank of New York | ) |
| Mellon f/k/a the Bank of New York as | ) |
| Trustee for the Certificate Holders of the | ) |
| CWABS Inc., Asset-Backed Certificates, | ) |
| Series 2007-8, and Bank of America, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs bring this action to prevent foreclosure of their home alleging causes of action under the Fair Credit Reporting Act (FCRA), the Real Estate Settlement Procedures Act (RESPA), the Fair Debt Collection Practices Act (FDCPA), and state law for intentional/negligent infliction of emotional distress, gross negligence, and violation of the Tennessee Consumer Protection Act (TCPA). Specifically, plaintiffs request that the court declare their loan current and award them damages for monetary loss and emotional distress. Defendants respond that plaintiffs have only paid principal and interest due on the loan through May 2012, and are in default as of June 1, 2012.

This matter is before the court on defendants' motion for summary judgment [R. 15]. Plaintiffs have responded [Doc. 32]. The court has carefully considered the motion and for the reasons stated herein, finds that defendants' motion for summary judgment should be granted.

### I. Background

On June 18, 2007, plaintiffs executed a promissory note payable to Countrywide Home Loans in the principal amount of $147,300. Plaintiffs also executed a Deed of Trust as security for the promissory note. After plaintiffs closed on the loan, Countrywide sold and transferred the loan to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of the CWABS Inc. Asset-Backed Certificates, Series 2007-8. In July 2008, Bank of America acquired Countrywide which subsequently changed its name to BAC Home Loans Servicing.

In 2009, plaintiffs failed to make their monthly payments for January and February, and defendants sent a "Notice of Intent to Accelerate" to plaintiffs. In May 2010, the parties entered into a loan modification agreement. In November 2011, servicing of the loan was assigned to defendant Specialized Loan Servicing (SLS), effective January 1, 2012. SLS received monthly payments from plaintiffs in January and February 2012. On February 17, 2012, SLS sent a "Notice of Default and notice of Intent to Foreclose" to plaintiffs for failure to pay the December 2, 2011 payment.

Plaintiffs state that after the loan modification agreement, their payments were lower than their initial payments; however, defendants incorrectly marked their payments

as incomplete payments and began sending plaintiffs collection letters. Defendants started foreclosure proceedings in 2012.

Plaintiffs filed Chapter 13 bankruptcy in March 2012. The proposed Chapter 13 plan called for payments of $1,200 per month. Plaintiffs made six payments totaling $6,255 into the Chapter 13 plan. The parties reached an agreement that there was no arrearage on the loan as of March 8, 2012. At that point, the Chapter 13 plan had not been confirmed, and plaintiffs were to use the plan funds to apply toward the loan. SLS did not receive any payments during the pendency of the bankruptcy, which was dismissed in September 2012. No payments were received until November and December 2013, when plaintiffs made three trial period payments as part of an application for a loan modification. Plaintiffs were offered a loan modification in January 2014, which plaintiffs declined. Since declining SLS's loan modification offer, plaintiffs have made no further payments on their loan. Defendants contend that plaintiffs have only paid principal and interest due on the loan through May 2012, and are in default as of June 1, 2012.

## II. Standard of Review

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) sets forth the standard for summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "a party asserting that a fact cannot be or is genuinely disputed must support the

3

assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). The "mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the court concludes a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Id.*

## III. Analysis

### A. Fair Credit Reporting Act

Defendants move for summary judgment on plaintiffs' claim under the FCRA. Plaintiffs have failed to respond to defendants' argument for dismissing their FCRA claim; and therefore, have failed to come forward with evidence of any specific facts showing the presence of any genuine issue for trial. Local Rule 7.2 of this court states that "failure to respond to a motion may be deemed a waiver of opposition to the relief sought." See Local Rule 7.2; *Cargle v. City of Chattanooga*, 2003 WL 23471545 (E.D.Tenn. 2003); *Campbell v. McMinn Cnty*, 2012 WL 369090 (E.D.Tenn. 2012). Accordingly, the court finds that defendants are entitled to summary judgment on plaintiffs' claim under the FCRA, and the claim will be dismissed.

### B. Real Estate Settlement Procedures Act

Under RESPA, "if any servicer of a federally related mortgage loan receives a qualified written request (QWR) from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(a). To constitute a QWR, the correspondence from the borrower must enable the servicer to identify the name and account of the borrower, include a statement of the reasons for the borrower's belief that the account is in error, or provide sufficient detail to the servicer regarding other information sought by the borrower. *See Jestes v. Saxon Mortgage Servs. Inc.,* 2014 WL 1847806 at *5 (M.D.Tenn. May 8, 2014). Within 60 days of receipt of a QWR, the

5

servicer must either make appropriate corrections to the borrower's account or, after investigation, provide a written explanation including a statement of reasons the servicer believes the account is correct or any other information requested by the borrower. *See* 12 U.S.C. § 2605(e)(2). Thus, to state a viable claim under RESPA, a plaintiff must show that he sent a correspondence which met the requirements of a QWR, that the servicer failed to timely respond, and that this failure caused plaintiff actual damages. *Jestes,* 2014 WL 18746806 at *5.[1]

Here, plaintiffs' RESPA claim is based upon a December 8, 2011, 24-page letter from plaintiffs' counsel purporting to be a QWR. The letter contained a generic laundry list of document requests and legal arguments, none of which were specific to plaintiffs or their loan. The letter questions whether the "origination" of the loan was lawful and whether "your company" is the "holder in due course" of the note. The letter then sets forth pages of document requests for loan documents, origination documents, agreements, "assignments, transfers, allonges," *etc*. This is not a proper QWR as the letter does not request information required to be responded to under RESPA. *See Minson v. CitiMortgage Inc.,* 2013 WL 2383658 at *5 (D.Md. May 29, 2013) (although communication cited RESPA and claimed to be a QWR it was not because it sought copies of loan documents and proof of servicer's authority to service loan); *Au v. State Mortg. Co.,* 948 F.Supp.2d 1086, 1104 (D.Hawaii 2013) (letter which among other things asked for loan documents was not a QWR and [servicer] had no obligation under RESPA

---

[1] The 20 day and 60 day acknowledge and response deadlines were the time periods in effect when plaintiffs sent their purported QWR letter to defendants. RESPA has since been amended to reduce those time periods to 5 days and 30 days, respectively.

to respond); *Barocio v. Bank of America N.A.,* 2012 WL 3945535 at *7 (N.D.Cal. Sept. 10, 2012) (request for loan documents is not a proper subject of a QWR); *McGory v. BAC Home Loan Servs. LP,* 2011 WL 1743475 at *2-3 (N.D.Ohio May 6, 2011) (servicer had no obligation to respond to purported QWR which requested all documents pertaining to the origination of mortgage, as well as certified copies of loan documents, allonges, assignment and transfer receipts). Under the authority cited, the court finds that the December 2011 letter was not a valid QWR, and defendants had no obligation to respond under RESPA.

Additionally, the record shows that defendants provided a sufficient response to the letter. First, on December 15, 2011, defendants sent a letter to plaintiffs' counsel, attaching a copy of plaintiffs' loan payment history, a detailed outline of transactions, servicing expenses paid to third parties, tax and insurance payments, and any late charges assessed and paid. The letter further stated that "if you have any questions, please call us at 1-800-669-6607." Second, on January 4, 2012, defendants sent two additional letters to plaintiffs' counsel referencing counsel's "recent request." In one of the letters, defendant responded to issues raised by counsel and provided a phone number for customer representatives who could provide assistance to plaintiffs. In the other letter, defendants notified plaintiffs that SLS was the new servicer of the loan and provided a phone number and mailing address for SLS, and a phone number for customer service. Based on the record in this case, the court finds that defendants responded to counsel's letter and provided information responsive to plaintiffs' specific requests. Defendants

7

were required to do no more under RESPA. Accordingly, plaintiff's claim for violation of RESPA will be dismissed.

### C. Fair Debt Collection Practices Act

Defendants move for summary judgment on plaintiffs' claim for violation of the FDCPA. Plaintiffs have failed to respond to defendants' argument for dismissing their claim; and therefore, have failed to come forward with evidence of any specific facts showing the presence of any genuine issue for trial. Accordingly, the court finds that defendants are entitled to summary judgment on plaintiffs' claim for violation of the FDCPA, and the claim will be dismissed.

### D. Intentional/Negligent Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must establish the following elements: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff. *Lourcey v. Estate of Scarlett,* 146 S.W.3d 48, 51 (Tenn. 2004). To establish a claim for negligent infliction of emotional distress, a plaintiff must demonstrate each of the elements of a general negligence claim, and in addition, a plaintiff must establish the existence of a "serious or severe emotional injury that is supported by expert medical or scientific evidence." *Id.* at 52.

Plaintiffs allege that they "have suffered severe emotional distress from the defendants' outrageous actions that were either intentionally inflicted with gross indifference or gross negligence and the defendants had to know and should have known

8

their conduct would affect these injuries." Other than this conclusory statement, plaintiffs offer no evidence that defendants acted intentionally or recklessly to inflict emotional distress. Nor have plaintiffs presented any evidence of "outrageous" conduct. *See Sykes v. Bank of America Corp.,* 2014 WL 468608 at *6-7 (E.D.Mich. Sept. 19, 2014) (finding that defendants' actions during the loan modification process did not amount to outrageous conduct and dismissing claim for intentional infliction of emotion distress).

Additionally, plaintiffs have presented no evidence of any "serious" mental injury. Plaintiffs assert that they "have begun to suffer some signs of stress" and that they "have developed a great distrust of SLS and Bank of America." However, this does not constitute serious mental injury under Tennessee law. In *Hossain v. Ocwen Loan Servicing LLC,* the borrower asserted a claim for intentional infliction of emotional distress based upon his allegation that the defendant knew that its actions would cause him a "high degree of health and financial loss." The court held that the plaintiff's allegations fell short of showing conduct by the defendant that "was so outrageous in character and extreme in degree and that such conduct caused a serious mental injury to the plaintiff." *Hossain,* 2014 WL 4347620 at *8 (M.D.Tenn. Aug. 29, 2014). Plaintiffs have presented no authority to the contrary. Accordingly, the court finds that plaintiffs cannot establish a claim for intentional infliction of emotional distress.

As to their claim for negligent infliction of emotional distress, plaintiffs have not presented any medical or scientific evidence to establish the existence of a serious or a severe emotional injury. *See Prince v. Beal Bank SSB,* 2010 WL 841273 at *6

9

(M.D.Tenn. Mar. 4, 2010) (granting summary judgment to defendants in a wrongful foreclosure action when plaintiff failed to present "any competent medical proof showing that he suffered from a serious or severe emotional injury"). The court finds that plaintiffs cannot establish a claim for negligent infliction of emotional distress. Accordingly, plaintiffs' claims for intentional/negligent infliction of emotional distress will be dismissed.

### E.  Gross Negligence

Defendants move for summary judgment on plaintiffs' gross negligence claim. Plaintiffs have failed to respond to defendants' argument for dismissing their gross negligence claim; and therefore, have failed to come forward with evidence of any specific facts showing the presence of any genuine issue for trial. Accordingly, the court finds that defendants are entitled to summary judgment on plaintiffs' claim for gross negligence, and the claim will be dismissed.

### F.  Tennessee Consumer Protection Act

Plaintiffs claim violation of the TCPA because they were promised a reduction in their loan payments and induced to make trial payments toward a loan modification, only to be told later that the modification was not going to be the amount they were promised.

Unfortunately for plaintiffs, the Supreme Court of Tennessee has held that the TCPA does not apply to repossession and collateral disposition activities. *See Pursell v. First Am. Nat'l Bank,* 937 S.W.2d 838, 841-42. Based primarily upon *Pursell*, Tennessee courts, both state and federal, have held that the TCPA does not apply to alleged deceptive conduct in foreclosure proceedings. *See Jestes,* 2014 WL 1847806 at *12.

10

Moreover, it is well-settled that the TCPA is inapplicable to loan modification proceedings because a loan modification deals with the "credit terms of a transaction," which are specifically exempted from coverage under the TCPA. *See Shelton v. Bank of America,* 2015 WL 9480465 at *4 (M.D.Tenn. Dec. 29, 2015) (noting that "the TCPA does not apply to either mortgage foreclosures or to actions involving the credit terms of a transaction, such as loan modifications"); *LeBlanc v. Bank of America N.A.,* 2013 WL 3146829 at *8 (W.D.Tenn. June 18, 2013) (holding that "there is no cause of action under the TCPA related to loan modification proceedings as they are considered to arise out of the extension of credit"). Accordingly, the court finds that plaintiffs' TCPA claim fails as a matter of law, and the claim will be dismissed.

### G. Declaratory Judgment

Plaintiffs request that the court declare their loan current. The record shows that plaintiffs stopped making their monthly payments under the loan and are in default having only paid principal and interest through May of 2012. Further, plaintiffs concede in their filings that they have not been setting aside all of their monthly payments into escrow during this four-year period and have neither offered nor indicated that they are willing or able to tender the full past-due balance under the loan. Based upon these undisputed facts, plaintiffs are not entitled to a declaration that their loan is current. *See Blake v. Amer. Trust Co.,* 292 N.W. 504 (Mich. 1940) (plaintiff cannot seek cancellation of foreclosure where he failed to offer to repay outstanding loan or any part of it); *Yuille v. Amer. Home Mortg. Servs.,* 2012 WL 1914056 at *1 (6th Cir. May 29, 2012) (where borrower had defaulted on loan, unclean hands doctrine applied to bar his quiet title

11

action). Accordingly, the court finds defendants are entitled to judgment on plaintiffs' request that the court declare their loan current and plaintiffs' request for declaratory relief will be dismissed.

### IV. Conclusion

For the foregoing reasons, the court hereby **GRANTS** defendants' motion for summary judgment [R. 15] in its entirety, and this case is **DISMISSED.**

_____
**UNITED STATES DISTRICT JUDGE**